IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALLYSSA MONEA | ) | CASE NO. |
| 10606 Dot Avenue NE | ) | |
| Alliance, Oh 44601 | ) | JUDGE: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| SPRINT/UNITED MANAGEMENT | ) | |
| COMPANY | ) | **JURY DEMAND ENDORSED** |
| 1222 30th Street NW | ) | **HEREIN** |
| Canton, OH 44709 | ) | |
| | ) | |
| **Serve also:** | ) | |
| Sprint/United Management Company | ) | |
| 6391 Sprint Parkway | ) | |
| Overland Park, KS 66251 | ) | |
| | ) | |
| **Serve also:** | ) | |
| Sprint/United Management Company | ) | |
| c/o Corporation Service Company | ) | |
| 2900 SW Wanamaker Drive, Suite 204 | ) | |
| Topeka, KS 66614 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| DONNIE HILL | ) | |
| c/o Sprint Corporation | ) | |
| 1222 30th Street NW | ) | |
| Canton, OH 44709 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| KEVIN TICHON | ) | |
| 3665 Brookside Drive | ) | |
| Norton, OH 44203 | ) | |
| | ) | |
| **Serve also:** | ) | |
| c/o Sprint Corporation | ) | |
| 1222 30th Street NW | ) | |
| Canton, OH 44709 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Allyssa Monea, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES

1.  Monea is a resident of the city of Alliance, county of Mahoning, state of Ohio.

2.  Sprint/United Management Company (hereinafter, "Sprint") is a foreign corporation which is headquartered at 6450 Sprint Parkway Overland Park, Kansas 66251.

3.  Sprint operates a business located at 1222 30th Street NW, Canton, Ohio 44709.

4.  Upon information and belief, Hill is a resident of the state of Ohio.

5.  Hill is, and, at all times hereinafter mentioned, was an individual who was a manager and/or supervisor at Sprint who acted directly or indirectly in the interest of Sprint.

6.  Hill is, and, at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

7.  Hill made and/or participated in the adverse actions asserted herein.

8.  Upon information and belief, Tichon is a resident of the state of Ohio.

9.  Tichon is, and, at all times hereinafter mentioned, was an individual who was a manager and/or supervisor at Sprint who acted directly or indirectly in the interest of Sprint.

10. Tichon is, and, at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

11. Tichon made and/or participated in the adverse actions asserted herein.

## JURISDICTION & VENUE

12. This court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 in that Monea is alleging a Federal Law Claim under the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq*.

13. All material events alleged in this Complaint occurred in county of Mahoning.

2

14. This Court has supplemental jurisdiction over Monea's state law claims pursuant to 28 U.S.C. § 1367 as Monea's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

16. Within 300 days of the conduct alleged below, Monea filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2018-01504 against Sprint.

17. On or about March 7, 2019, the EEOC issued and mailed a Notice of Right to Sue letter to Monea regarding the Charges of Discrimination brought by Monea against Sprint.

18. Monea received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e 5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

19. Monea has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

20. Monea has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

21. Monea is a former employee of Sprint.

22. Monea is female.

23. Monea identifies as lesbian.

24. Sprint employed Monea in or about July 2015.

25. Monea did not disclose during her interview that she identifies as lesbian.

26. Monea did not disclose at the beginning of her employment that she identifies as lesbian.

27. Sprint employed Monea for two years and seven months.

28. Sprint hired Monea as a lead retail consultant.

29. Monea started her employment as a lead retail consultant in Salem, Ohio.

30. Monea worked at the Salem location for two years.

31. During Monea's employment at the Salem location, she did not have any meaningful history of discipline.

32. Monea was a vital part of getting the Salem Sprint store up and running.

33. Sprint periodically sent other lead retail consultants from other store locations to learn from Monea.

34. During Monea's time at the Salem location, she was an excellent employee.

35. While at Salem, Monea won a sales competition because of her job performance.

36. Monea transferred to the Canton store in April 2017.

37. Monea worked at the Canton store for six months with no meaningful discipline.

38. In July 2017, one of Monea's co-workers disclosed to management that Monea identifies as a lesbian (hereinafter referred to as "Disclosure Incident").

39. During the Disclosure Incident, Dezerea Albert and Hill were both present.

40. During all material events asserted herein, Albert is and/or was a retail consultant.

41. During the Disclosure Incident, Albert made a statement in front of Hill that Monea preferred women sexually to men.

42. During the Disclosure Incident, Monea replied to Albert, "thanks for outing me to [Hill]."

43. During the Disclosure Incident, Albert stated, "oh, I though [Hill] knew [about your sexual orientation] already."

44. Hill was present and heard all of the comments during the Disclosure Incident.

45. Monea applied for a supervisor position at the Canfield store.

46. The co-worker named Dezerea Albert told Hill about Monea's sexual orientation approximately one week before Monea's interview.

47.  Hill became aware of Monea's sexual orientation.

48. Tichon became aware of Monea's sexual orientation.

49. Monea interviewed for a supervisor position within the Canton store.

50. Tichon denied Monea's application to be a Sales Supervisor in July 2017.

51. Monea was qualified for the July 2017 supervisor position.

52. Monea, applied for the July 2017 Supervisor position.

53. Garret Walker applied for the July 2017 Supervisor Position.

54. Walker is male.

55. Walker identifies as heterosexual.

56. Walker conforms to Defendants' perceived stereotype of how a male should act.

57. Sadie Jackson applied for the July 2017 Supervisor Position.

58. Jackson is female.

59. Jackson identifies as heterosexual.

60. Jackson conforms to Defendants' perceived stereotype of how a female should act.

61. Defendants selected Walker for the promotion.

62. As of July 2017, Monea had more experience than Walker.

63. As of July 2017, Monea had a stronger performance history than Walker.

64. Defendants promoted Walker over Monea due to his gender, male.

65. Defendants promoted Walker over Monea because of Walker's sexual orientation.

5

66. Defendants promoted Walker over Monea because Monea failed to conform to Defendants' perception of how a female should act.

67. After the decision to promote Walker was announced, Jackson immediately put in her two-week notice.

68. After Jackson put in her two-week notice, Jackson stated to Monea that she needed to "get out and find a new job."

69. Jackson told Monea she needed to "get out and find a new job" because she said that Walker told her that the first thing he was going to do upon getting promoted would be to try and get Monea terminated.

70. After Jackson put in her two-week notice, Jackson told Monea that she had applied for two other managerial positions with Sprint.

71. After Jackson put in her two-week notice, Jackson told Monea that both times she applied for managerial positions, Sprint promoted male employees over her.

72. Jackson told Monea that as this was the third time Sprint promoted a male over her, she was sure that the reason she was not being promoted was due to her gender.

73. Tichon was involved in the two other promotions where male employees were promoted over Jackson.

74. Denying Monea the July 2017 promotion constituted an adverse action.

75. After Defendants promoted Walker, Monea witnessed Walker and Hill continuously hire young male employees.

76. Defendants replaced Jackson with Brandon Brady.

77. Brady is male.

78. Upon information and belief, Brady identifies as heterosexual.

6

79. At the time Defendants hired Brady, he was approximately 19 years old.

80. Defendants conducted approximately five interviews to replace Jackson.

81. Of the five interviews Defendants conducted to replace Jackson, only one of the candidates was female.

82. Defendants did not select the female candidate to replace Jackson.

83. After Defendants hired Brady, Walker stated to Brady in front of Monea that he loved Brady.

84. After Defendants hired Brady, Walker stated to Brady that he wanted to fill the store with more people "like you."

85. When Walker told Brady, he wanted to fill the store with more employees "like you," he meant more young male employees.

86. Immediately after Walker stated he wanted to fill the store with young males, Monea reported this to Hill.

87. Monea reported to Hill that it was wrong that Walker stated that he wanted to only hire young male employees.

88. When Monea reported to Hill that Walker stated he wanted to only hire young male employees, Hill said not to worry about this comment.

89. Hill told Monea not to worry about Walker saying he only wanted to hire young male employees because Hill was the one who made the hiring decisions.

90. Upon information and belief, Defendants did not conduct an investigation into Monea's complaint that Walker stated he only wanted to hire young male employees.

91. In failing to conduct an investigation into Monea's complaint that Walker stated he only wanted to hire young male employees, Defendants ratified Walker's gender discrimination.

92. As Defendants did not investigate Monea's complaint of gender discrimination regarding Walker, it evidenced to Monea that Defendants would not investigate complaints of gender discrimination in the future.

93. Upon information and belief, Defendants did not discipline Walker for stating that he only wanted to hire young male employees.

94. In failing to discipline Walker for stating that he only wanted to hire young male employees, Defendants ratified Walker's gender discrimination.

95. Defendants did not terminate Walker's employment for stating that he only wanted to hire young male employees.

96. In failing to terminate Walker's employment for stating that he only wanted to hire young male employees, Defendants ratified Walker's gender discrimination.

97. As Defendants did not discipline and/or terminate Walker following Monea's complaint of gender discrimination, it evidenced to Monea that Defendants would not investigate any future complaints of gender discrimination.

98. After Defendants hired Brady, the next retail consultant Defendants hired was Cameron Last Name Unknown.

99. Cameron LNU is male.

100. Upon information and belief, Cameron LNU identifies as heterosexual.

101. Cameron LNU conformed to Defendants' perception of a male stereotype and how a male should act.

102. Cameron LNU was in his 20's when Defendants hired him.

103. After Defendants hired Cameron LNU, Defendants hired Evan Yost.

104. Yost is male.

105. Upon information and belief, Yost identifies as heterosexual.

106. Yost conformed to Defendants' perception of a male stereotype and how a male should act.

107. Yost was approximately 19 years old when Defendants hired him.

108. Monea applied for another promotion shortly after learning she did not receive the July 2017 promotion.

109. One of the individuals involved in making the second promotion application decision was Quino Lacey.

110. Monea did not get promoted following her second promotion application.

111. Lacey told Monea that she "did everything right" regarding her second promotion application.

112. Lacey told Monea that he had an assistant manager position opening soon and that he wanted her to apply and interview for the position when it was posted.

113. The assistant manager position was a higher-level position than the position that Monea was not selected for in the second promotion application.

114. Tichon was also involved in the second promotion application decision.

115. Defendants did not select Monea following her second promotion application due to her gender.

116. Defendants did not select Monea following her second promotion application due to her sexual orientation.

117. Defendants did not select Monea following her second promotion application because she did not conform to Defendants' perception of the male stereotype.

118. Defendants did not select Monea following her second promotion application in retaliation for her protected complaint regarding Walker.

119. On October 19, 2017, Monea was given a verbal warning for not making promotional calls.

120. When Defendants disciplined Monea on October 19, 2017, Monea was in charge of managing the promotional calls.

121. When Defendants disciplined Monea on October 19, 2017, Monea was unaware that she had to make promotional calls as she was the one managing the calls being made by the other retail consultants.

122. When Defendants disciplined Monea on October 19, 2017, Monea did make some promotional calls.

123. On November 2, 2017, Hill gave Monae a verbal warning about her sales performance.

124. On November 11, 2017, Tichon sent an email to his district stores.

125. Tichon's November 11, 2017 Email highlighted the fact that Monea was one of the top sales consultants in the district.

126. On November 30, 2017, Hill gave Monea a written warning for not properly securing her register at the shift change.

127. The November 30, 2017 Write Up is pretextual because other similarly-situated employees were not written up for this same behavior.

128. Defendants did not discipline Yost for failing to properly secure his register at a shift change.

129. The November 30, 2017 Write Up is pretextual because Monea was given verbal permission to leave from the shift leader without closing her register.

130. Monea wrote in the comments section of the write up that her managers were discriminating against her.

131. Monea made a protected complain in her November 30, 2017 write up that she was being treated

132. The November 30, 2017 write up is pretextual because the company policies were not enforced fairly against all employees.

133. The November 30, 2017 write up is pretextual because Hill acted with animus against Monea because of her sexual orientation.

134. The November 30, 2017 write up is pretextual because Hill acted with animus against Monea because she failed to conform to his perception of the female stereotype and how a female should act.

135. The November 30, 2017, write up is pretextual because Hill acted with animus against Monea because of her gender.

136. The November 30, 2017 write up is pretextual because Hill acted with animus against Monea because of her protected complaint regarding gender discrimination.

137. On January 8, 2018 Hill gave Monea a written warning regarding her sales performance.

138. On January 31, 2018 Tichon sent an email to his district stores reporting that Monea was one of the top three sales consultants in the district.

139. On February 2, 2018 at 12:56 pm Hill sent Monea an observation notice.

140. The February 2, 2018 observation notice stated that Monea was not greeting guests properly.

141. Monea responded to the observation notice explaining that she had just signed in for her shift at the back computer and was not close enough to greet customers at that moment.

142. On February 2, 2018 Hill acknowledged Monea's response.

143. On February 2, 2018, at 1:01 pm Hill sent Monea a second observation notice.

144. The second February 2, 2018 observation notice stated that Monea was using the wrong verbiage with a customer.

145. Monea responded to the observation notice explaining why that particular verbiage would not work in that specific instance.

146. On February 2, 2018 Hill acknowledged Monea's response and said, "true."

147. Although Hill acknowledged that his second observation notice on February 2, 2018 was groundless, Hill gave Monea a final written warning for her sales performance.

148. The February 2, 2018 write up was pre-textual.

149. Defendants placed Monea on a final written warning because of her gender.

150. Defendants placed Monea on a final written warning because of her sexual orientation.

151. Defendants placed Monea on a final written warning because she failed to conform to their perception of the female stereotype and how a female should act.

152. Defendants placed Monea on a final written warning in retaliation for making a protected complaint regarding gender discrimination.

153. On February 16, 2018 Monea submitted an alternative dispute resolution request.

154. While Monea was writing her request, Hill stood behind her and watched Monea type the complaint against him.

155. Hill stood behind Monea as an attempt to intimidate her.

156. Hill stood behind Monea intending to intimidate her to stop making the alternative dispute resolution request.

157. In her February 16, 2018 Complaint, Monea complained that she was being discriminated against for her gender and sexual orientation.

158. In her February 16, 2018 Complaint, Monae complained that she was being retaliated against for making protected complaints regarding gender discrimination.

159. Upon information and belief, Sprint did not investigate Monea's February 16, 2018 Complaint.

160. In failing to investigate Monea's February 16, 2018 Complaint, Defendants ratified the discrimination of Monea on the basis of her gender.

161. In failing to investigate Monea's February 16, 2018 Complaint, Defendants ratified the discrimination of Monea on the basis of her sexual orientation.

162. In failing to investigate Monea's February 16, 2018 Complaint, Defendants ratified the discrimination of Monea on the basis of their perception that she did not conform to their stereotype of how a female should act.

163. In failing to investigate Monea's February 16, 2018 Complaint, Defendants ratified the retaliation of Monea for making complaints regarding gender discrimination.

164. Defendants' failure to investigate her February 16, 2018 provided evidence to Monea that further complaints of discrimination and/or unfair treatment would not be investigated and/or taken seriously.

165. Defendants terminated Monea on March 2, 2018.

166. Defendants terminated Monea because of her gender.

167. Defendants terminated Monea because of her sexual orientation.

168. Defendants terminated Monea because she did not conform to their perception of the female stereotype and how a female should act.

169. Defendants terminated Monea in retaliation for making protected complaints regarding gender discrimination.

## COUNT I: GENDER DISCRIMINATION IN VIOLATION OF CRA 42 U.S.C. § 2000e-2 *et seq.*

### (Against Sprint)

170. Monea restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

171. Monea is a member of a statutorily protected class based on her gender under the CRA 42 U.S.C. § 2000e-2 *et seq.*

172. Sprint treated Monea differently than other similarly situated employees based on her gender.

173. Sprint treated Monea differently than other similarly situated employees because it perceived her to not conform to the female stereotype and/or how a female should act.

174. Sprint discriminated against Monea on the basis of her gender throughout her employment with the company.

175. Sprint treated Monea differently due to its perception that Monea did not conform to the female gender, or how a female should act.

176. Sprint failed to promote Monea due to her gender.

177. Sprint failed to promote Monea because she failed to conform to its perception of the female stereotype and/or how a female should act.

178. Sprint terminated Monea's employment without just cause.

179. Sprint terminated Monea's employment based on her gender.

180. Sprint terminated Monea's employment because it perceived her to not conform to the female stereotype and/or how a female should act.

181. Sprint's discrimination against Monea based on her gender violates CRA 42 U.S.C. § 2000e-2 *et seq.*

182. As a direct and proximate result of Sprint's conduct, Monea suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II:  RETALIATION IN VIOLATION OF CRA 42 U.S.C. § 2000e-2 *et seq*.

### (Against Sprint)

183. Monea restates each and every prior paragraph of this complaint, as if it were fully restated herein.

184. As a result of the Sprint's discriminatory conduct described above, Monea complained about the harassment on the basis of the gender discrimination she experienced.

185. Subsequent to Monea's reporting of gender discrimination to her supervisors and/or managers, Monea received pre-textual write ups more and more frequently.

186. Subsequent to Monea's reporting of gender discrimination to her supervisors and/or managers, Monea received unreasonably low performance evaluations and unjustified write ups or corrective actions.

187. Subsequent to Monea's reporting of gender discrimination to her supervisors and/or managers, Monea was terminated without just cause.

188. Sprint's actions were retaliatory in nature based on Monea's opposition to the unlawful discriminatory conduct.

189. As a direct and proximate result of Sprint's retaliatory discrimination against and termination of Monea, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: GENDER DISCRIMINATION IN VIOLATION
## OF R.C. § 4112.01 *et seq.*

### (Against All Defendants)

190. Monea restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

191. Monea is female.

192. Monea is a member of a statutorily protected class based on her gender under R.C. § 4112.01 *et seq.*

193. Defendants treated Monea differently than other similarly situated employees based on her gender.

194. Defendants treated Monea differently than other similarly situated employees because she failed to conform to their perception of the female stereotype and/or how a female should act.

195. Defendants discriminated against Monea on the basis of her gender throughout her employment at the Canton store.

196. Defendants failed to promote Monea due to her gender.

197. Defendants failed to promote Monea because she did not conform to their perception of the female stereotype and/or how a female should act.

198. Defendants terminated Monea's employment without just cause.

199. Defendants terminated Monea's employment based on her gender.

200. Defendants terminated Monea's employment because she did not conform to their perception of the female stereotype and/or how a female should act.

201. Defendants' discrimination against Monea based on her gender violates R.C. § 4112.01 *et seq.*

202. As a direct and proximate result of Defendant's conduct, Monea suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV:  RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

### (Against All Defendants)

203. Monea restates each and every prior paragraph of this complaint, as if it were fully restated herein.

204. As a result of the Defendants' discriminatory conduct described above, Monea complained about the harassment on the basis gender discrimination she experienced.

205. Subsequent to Monea's reporting of gender discrimination to her supervisors and/or managers, Monea received unreasonably low performance evaluations and unjustified write ups or corrective actions.

206. Subsequent to Monea's reporting of gender discrimination to her supervisors and/or managers, Monea was terminated without just cause.

207. Defendants' actions were retaliatory in nature based on Monea's opposition to the unlawful discriminatory conduct.

208. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

209. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Monea, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Monea demands from Defendants the following:

(a) An award against each Defendant of compensatory and monetary damages to compensate Monea for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(b) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(c) An award of reasonable attorneys' fees and non-taxable costs for Monea's claims as allowable under law;

(d) An award of the taxable costs of this action; and

(e) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/*Daniel S. Dubow*

Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com
           daniel.dubow@spitzlawfirm.com

*Attorneys for Plaintiff Allyssa Monea*

18

19

## JURY DEMAND

Plaintiff Allyssa Monea demands a trial by jury by the maximum number of jurors permitted.

/s/*Daniel S. Dubow*

Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**